T.C. Memo. 2021-68

UNITED STATES TAX COURT

ES NPA HOLDING, LLC, JOSEPH NPA INVESTMENT, LLC, TAX
MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL
REVENUE, Respondent

Docket No. 13471-17.                    Filed June 3, 2021.

Jason A. Reschly, Derek T. Teeter, and Ashley N. Minton, for petitioner.

Randall L. Eager and Robert C. Teutsch, for respondent.

MEMORANDUM OPINION

WEILER, Judge: This matter is before the Court on petitioner's motion for

summary judgment and respondent's cross-motion for partial summary judgment.[1]

_____

[1]Each party has filed an objection to the other's motion, and respondent
replied to petitioner's objection. We refer to the motions, objections, and the reply,
collectively, as the motion papers.

[*2] For the reasons outlined below we will deny the motion for summary judgment filed by Joseph NPA Investment, LLC (petitioner), and grant in part and deny in part the cross-motion for partial summary judgment filed by the Commissioner of Internal Revenue (respondent).

Respondent issued a notice of final partnership administrative adjustment (FPAA) for the 2011 taxable year of ES NPA Holding, LLC (ES NPA). The FPAA was mailed to ES NPA's members, including its tax matters partner, petitioner. The FPAA increased ES NPA's ordinary income and determined that section 6662 accuracy-related penalties applied to the members of ES NPA.[2] Petitioner timely petitioned this Court challenging the adjustment to ES NPA's 2011 income and the penalties.

In its motion for summary judgment petitioner argues that respondent's adjustment to ES NPA's 2011 ordinary income originates at the level of another limited liability company (LLC) named Integrated Development Solutions, LLC (IDS), in which ES NPA held an interest. In other words petitioner contends that the adjustment is a partnership item of IDS and not a partnership item of ES NPA.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the relevant year, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] Respondent opposed petitioner's motion for summary judgment and filed his own cross-motion for partial summary judgment, contending that the unreported income is a partnership item of ES NPA, and not a partnership item of IDS. In his cross-motion for partial summary judgment respondent also seeks judgment as a matter of law that ES NPA is not entitled to a flowthrough compensation deduction equal to the value of a membership interest it received in exchange for services provided (or to be provided).

## Background

The background of this case is drawn from the first and supplemental stipulations of facts, the exhibits submitted therewith, and the undisputed portions of the exhibits attached to the parties' motion papers. We refer to those documents, from which we draw factual inferences, as the record.

### ES NPA and Its Tax Matters Partner

ES NPA was formed on September 12, 2011. The tax matters partner for ES NPA is petitioner, and SBV-NPA holds the remaining membership interest in ES NPA.[3] When the petition in this case was filed, petitioner was a Delaware LLC, formed on September 22, 2011.

---

[3]According to respondent, the entity holding the remaining interest in ES NPA was "SVP-NPA". Our conclusions herein would remain the same whether

**[*4]**   When the petition in this case was filed and at all other relevant times, ES NPA was a Delaware LLC, classified as a partnership for Federal income tax purposes.  For 2011 ES NPA's tax year was the calendar year.  On April 15, 2012, ES NPA timely filed its 2011 Form 1065, U.S. Return of Partnership Income.

ES NPA's FPAA

On March 20, 2017, respondent issued an FPAA to the members of ES NPA.  In the FPAA respondent determined that ES NPA failed to report income of $16,106,250 and that section 6662 penalties applied to the members of ES NPA. The FPAA did not provide a specific reason for the income adjustment; however, the parties stipulated that according to the FPAA respondent determined that the unreported income was attributable to ES NPA's receipt of a 50% direct capital interest in IDS; or in the alternative, ES NPA's receipt of a 30% indirect capital interest (held through IDS) in National Performance Agency, LLC (NPA, LLC).

Sale of the Consumer Loan Business

In 2011 Joshus Landy owned all the shares in NPA, Inc., an S corporation. Mr. Landy also owned 100% of the shares in three other S corporations.  Mr. Landy used these four S corporations to operate a consumer loan business.  In 2011

---

the owner is SBV-NPA or SVP-NPA.  Both parties agree that this entity is a passthrough entity.

[*5] Mr. Landy wanted to sell a portion of the loan business. Monu Joseph and Amit Raizada contacted Mr. Landy about the potential sale. Mr. Joseph and Mr. Raizada would later own membership interests in the LLCs that were members of ES NPA.

The sale of this portion of the business was arranged through the following transactions taking place on September 27, October 13, and October 14, 2011. On September 27, 2011, NPA, Inc., formed two LLCs: IDS and NPA, LLC. IDS had two classes of membership units (units): class B and class C. NPA, LLC had three classes of units: class A, class B, and class C. The class B and C units in IDS tracked the class B and C units in NPA, LLC, respectively, in that the owner of IDS class B units was entitled to 100% of the payments received by IDS because of its ownership of NPA, LLC class B units and the owner of IDS class C units was entitled to 100% of the payments received by IDS because of its ownership of NPA, LLC class C units.

On October 13, 2011, NPA, Inc., contributed substantially all of its business assets to NPA, LLC in exchange for all three classes of units (classes A, B, and C) in NPA, LLC. NPA, Inc., then contributed all three classes of units (classes A, B, and C) in NPA, LLC to IDS as a capital contribution to IDS. At the end of the day

[*6] on October 13, 2011, the relevant aspects of the entity ownership structure were as follows:



On October 14, 2011, NPA, LLC entered into revenue-sharing agreements with the other three S corporations that conducted the consumer loan business. An entity named NPA Investors, LP (NPA Investors), purchased from IDS all NPA, LLC class A units for $14,502,436. In addition, NPA Investors contributed $6,483,073 to NPA, LLC. On October 14, 2011, ES NPA exercised a call option granted by NPA, Inc., and pursuant thereto acquired all of the IDS class C units. Under the terms of that call option agreement ES NPA agreed to provide services

[*7] to NPA, Inc., in exchange for the option to pay $100,000 to NPA, Inc., to acquire all of the IDS class C units. The services consisted of rendering "strategic advice for the purpose of enhancing the performance of * * * [NPA, Inc.'s] business and to assemble an investor group that would purchase 40 percent of * * * [NPA, Inc.'s] business for approximately $21 million".

At the end of the day on October 14, 2011, the relevant aspects of the entity ownership structure were as follows:

[*8]



Similarly to ES NPA, IDS and NPA, LLC were also LLCs under State law, both were classified as partnerships for Federal income tax purposes, and each filed a Form 1065 for its 2011 tax year.

[*9]                                  Discussion

I.      Legal Concepts

        A.      Summary Judgment

A party may move for summary judgment regarding all or any part of the legal issues in controversy.  See Rule 121(a); Wachter v. Commissioner, 142 T.C. 140, 145 (2014).  We may grant summary judgment if the pleadings, stipulations and exhibits, and any other acceptable materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law.  See Rule 121(a) and (b); see also CGG Americas, Inc. v. Commissioner, 147 T.C. 78, 82 (2016); Elec. Arts, Inc. & Subs. v. Commissioner, 118 T.C. 226, 238 (2002).  We construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  The moving party has the burden of proving that there is no genuine issue of material fact.  Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  However, the nonmoving party may not rest upon the mere allegations or denials in its pleadings but instead must "set forth specific facts showing that there is a genuine dispute for trial."  Rule 121(d); see also Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

**[\*10] B.   TEFRA Rules**

The unified audit and litigation procedures of TEFRA[4] applied to ES NPA during the relevant period.[5]

**C.   Disregarded Entities**

Upon formation and until October 14, 2011, IDS and NPA, LLC were single-member LLCs.  Thus, during that period, IDS and NPA, LLC were both classified as "disregarded entities" for Federal income tax purposes under section 301.7701-3(b)(1)(ii), Proced. & Admin. Regs.

**D.   Our Jurisdiction**

Section 6226 provides for judicial review of FPAAs.  In general, section 6226(f) gives this Court jurisdiction to determine all partnership items of the partnership for the partnership's taxable year to which the FPAA relates. However, this Court's jurisdiction does not extend to determining the partnership items of lower tier partnerships.  See Sente Inv. Club P'ship of Utah v. Commissioner, 95 T.C. 243, 247-248 (1990).  That means that we may determine only the partnership

---

[4]Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, tit. IV, 96 Stat. 648-671, repealed by Bipartisan Budget Act of 2015, Pub. L. No. 114-74, sec. 1101(a), (c)(1), (g), 129 Stat. at 625, 638.

[5]ES NPA had flowthrough entities as its partners, so the small partnership exception in sec. 6231(a)(1)(B)(i) did not apply.

**[\*11]** items of the partnership to which the FPAA relates.  Id.  If the partnership items of a lower tier partnership are included in the FPAA of the partnership before us, we are without jurisdiction to determine those lower tier partnership items.  See Rawls Trading, L.P. v. Commissioner, 138 T.C. 271, 288-289 (2012); Sente Inv. Club P'ship of Utah v. Commissioner, 95 T.C. at 247-248.

Generally, the Commissioner's determinations in an FPAA are presumed correct, and the party challenging the FPAA bears the burden of proving those determinations are erroneous.  See Rule 142(a)(1); Crescent Holdings, LLC v. Commissioner, 141 T.C. 477, 485 (2013); Republic Plaza Props. P'ship v. Commissioner, 107 T.C. 94, 104 (1996).  However, the party alleging our jurisdiction to determine partnership items bears the burden of proving the facts establishing our jurisdiction.  Jimastowlo Oil, LLC v. Commissioner, T.C. Memo. 2013-195, at \*6; see also McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Pietanza v. Commissioner, 92 T.C. 729, 736-737 (1989), aff'd without published opinion, 935 F.2d 1282 (3d Cir. 1991).

Section 6231(a)(3) defines a partnership item as

> any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

**[\*12]** In general, the "partnership's aggregate and each partner's share of \* \* \* [i]tems of income, gain, loss, deduction, or credit of the partnership" are partnership items. Sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs.; see also sec. 703(a) ("[T]axable income of a partnership shall be computed in the same manner as in the case of an individual."). The tax treatment of any partnership item generally must be determined at the partnership level. Sec. 6221.

      E.      Receipt of a Partnership Interest in Exchange for Services

Section 721(a) provides that "[n]o gain or loss shall be recognized to a \* \* \* partner[] in the case of a contribution of property to the partnership in exchange for an interest in the partnership." (Emphasis added.) For the same reason the Commissioner has ruled that partners generally do not recognize gain or loss upon the conversion of a disregarded entity to a partnership. See Rev. Rul. 99-5, 1999-1 C.B. 434.[6]

By contrast, where a person receives a partnership interest in exchange for a contribution of services, nonrecognition is not always guaranteed. See sec. 1.721-1(b)(1), Income Tax Regs. Under section 1.721-1(b)(1), Income Tax Regs., the

---

[6]Rev. Rul. 99-5, 1999-1 C.B. 434, concludes that when an LLC, classified for tax purposes as a "disregarded entity", converts to a partnership by adding a second unrelated member, the LLC members are deemed for tax purposes as having made tax-free contributions to a new partnership in exchange for receipt of partnership interests.

**[\*13]** "receipt of a partnership <u>capital interest</u> in exchange for services is taxable to the service provider." <u>Crescent Holdings, LLC v. Commissioner</u>, 141 T.C. at 488 (emphasis added); <u>see also</u> sec. 83(a) (generally dictating the recipient's tax treatment of property received in connection with services performed); sec. 1.61-2(d), Income Tax Regs. (stating property received as compensation must be included in income). After section 1.721-1(b)(1), Income Tax Regs., went into effect, there was confusion about how receipt of a partnership profits interest would be treated. <u>See</u> Rev. Proc. 93-27, sec. 3, 1993-2 C.B. 343, 343. In 1993 the Commissioner issued Rev. Proc. 93-27, which addresses the issue and states that

> if a person receives a <u>profits interest</u> for the provision of services to or for the benefit of a partnership in a partner capacity or in anticipation of being a partner, the Internal Revenue Service will not treat the receipt of such an interest as a taxable event for the partner or the partnership.

Rev. Proc. 93-27, sec. 4.01, 1993-2 C.B. at 344 (emphasis added). <u>But see</u> <u>id.</u> sec. 4.02 (providing exceptions to the rule articulated in section 4.01). Therefore, under present guidance from the Commissioner, whether the receipt of a partnership interest in exchange for services provided to or for the benefit of the

**[\*14]** issuing partnership is a taxable event turns on whether the partnership interest is a capital interest or a profits interest. See Rev. Proc. 93-27, sec. 4.01.[7]

F.    Deduction for Compensation Paid in the Form of a Partnership Interest

Section 83(h) allows a deduction under section 162 to "the person for whom were performed the services in connection with which * * * property was transferred". Property includes a partnership interest in or held by the service recipient.[8] Secs. 1.83-3(e), 1.721-1(b), Income Tax Regs.; see also McDougal v. Commissioner, 62 T.C. 720, 728 (1974). The service recipient may deduct an amount equal to the payment that the service provider included in gross income under section 83(a), (b), or (d)(2), to the extent the amount meets the requirements of section 162 and the regulations interpreting it.[9] Sec. 83(h); sec. 1.83-6(a)(1), Income Tax Regs.; see Venture Funding, Ltd. v. Commissioner, 110 T.C. 236

---

[7]The Tax Court is not bound by revenue rulings; rather, under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), the weight afforded to revenue rulings depends upon their persuasiveness and the consistency of the Internal Revenue Service's position over time. See Webber v. Commissioner, 144 T.C. 324, 352-353 (2015).

[8]Sec. 83(e)(3) excludes from the reach of sec. 83 "the transfer of an option without a readily ascertainable fair market value".

[9]The service recipient may claim that deduction for the taxable year for which the service provider includes the amount in gross income. See sec. 83(h).

**[*15]** (1998) (holding that the deduction under section 83 is limited to the amount included, as opposed to includible, in gross income, subject to certain exceptions), aff'd without published opinion, 198 F.3d 248 (6th Cir. 1999).

Section 162(a) allows a deduction for the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". See also sec. 162(a)(1) (allowing deduction for "reasonable allowance for salaries or other compensation for personal services actually rendered").

II.    Our Analysis

    A.    The Court's Jurisdiction

Petitioner argues that respondent's proposed adjustment to ES NPA's income constitutes a partnership item of IDS, which the Court could only adjudicate in a proceeding under TEFRA involving IDS.  Specifically, petitioner contends that if income was realized with respect to the NPA, LLC class C units on October 14, 2011, then IDS was the source of that income because it held the class C units in NPA, LLC.  Accordingly, as petitioner argues, the income represents a partnership item of IDS and not ES NPA.

Respondent counters petitioner's argument and directs us to the call option agreement as the most relevant transactional document, which provides that ES NPA received IDS class C units, for the sum of $100,000 and for services provided

**[*16]** (or to be provided) by ES NPA. In respondent's view, the IDS class C units were worth more than the $100,000 paid, and consequently ES NPA received income that it was required to recognize on its 2011 partnership income tax return.

Petitioner argues that this Court's Opinion in Sente compels a decision in its favor. In that case the Court granted the Commissioner's motion to dismiss for lack of jurisdiction. Sente Inv. Club P'ship of Utah v. Commissioner, 95 T.C. at 249-250. The Court agreed with the Commissioner that it did not have jurisdiction to determine certain flowthrough partnership items from two partnerships in which the Sente Investment Club held limited partnership interests. Id. at 247-249. The relevant flowthrough items were losses and a credit. Id. at 246-247. The losses and credit were incurred by the two lower tier partnerships, and Sente Investment Club reported a distributive share of these items. Id. We concluded that allowing the partners of Sente Investment Club to contest adjustments to the partnership items of the lower tier partnerships would defeat the purpose of the TEFRA framework, which provided for a single proceeding with respect to any one partnership. Id. at 249.

Petitioner's reliance on Sente is misplaced. The adjustment at issue resulted when ES NPA obtained an interest in IDS; it is not a distributive share of IDS' income like the Sente Investment Club's distributive share of the losses and credit

**[*17]** of the lower tier partnerships. See id. at 246-247. Though the interest that ES NPA received--the IDS class C units--tracks the NPA, LLC class C units held by IDS, that does not alter the analysis. The record does not show that respondent based his adjustment on underlying payments from NPA, LLC to IDS under the terms of IDS class C units in NPA, LLC.[10] On the record before us, we hold that the adjustment to the 2011 gross income made in the FPAA is properly classified as a partnership item of ES NPA.[11]

### B.    Capital or Profits Interest

Relatively late in the game--namely, in its objection to respondent's cross-motion for partial summary judgment--petitioner advances the argument that the IDS class C units (and corresponding NPA, LLC units) received by ES NPA are mere profits interests, and thus no income is recognized because of the Commissioner's published guidance in Rev. Proc. 93-27, supra. In the motion papers, the parties have disputed at length the nature of this transaction.

---

[10]Furthermore, petitioner has not argued and the record does not show that IDS (rather than ES NPA) was the service provider.

[11]We do not decide herein whether respondent's adjustment at issue is proper, but only that the adjustment to 2011 gross income made in the FPAA is properly classified as a partnership item of ES NPA, and not IDS.

**[\*18]** If we were to adopt respondent's views of the receipt of the class C units entirely on the basis of the call option agreement between NPA, Inc., and ES NPA, one would question whether section 721 and its underlying regulations have any relevance to this case since under the call option agreement ES NPA did not transfer anything to IDS in exchange for the interest received in IDS. Instead, ES NPA acquired its interest in IDS from NPA, Inc., for $100,000 and the promise of services provided (or to be provided).

However, if we were to adopt petitioner's more expansive view of the receipt of the class C units and assume that section 721 would apply, respondent has nevertheless convincingly demonstrated a genuine dispute of material fact in the record regarding whether ES NPA held a capital interest rather than a profits interest. Thus, summary judgment is inappropriate with respect to this issue.

     C.     <u>Deductibility of the Value of the Class C Units Received</u>

Finally, in the motion papers, the parties also dispute whether ES NPA is entitled to a deduction equal to the value of the class C units received.

Petitioner's only plausible argument is that it is entitled to a compensation deduction for the value of the interest it received, which would plainly dictate the deduction to be a flowthrough item from IDS and/or NPA, LLC. However, as discussed in our analysis in <u>supra</u> Section II, Part A, we lack jurisdiction in this

**[*19]** proceeding to decide flowthrough items from a lower tier partnership. Equally, we decline to determine as a matter of law that ES NPA is not entitled to a deduction on these grounds as respondent argues.

Accordingly, we decline to grant respondent's cross-motion for partial summary judgment on this issue.

We have considered all of the arguments that the parties made and to the extent they are not addressed herein, we consider them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued denying petitioner's motion for summary judgment and granting in part, and denying in part, respondent's cross-motion for partial summary judgment</u>.